UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERICA C. MULLEN,

        Plaintiff,        CIVIL ACTION NO. 13-cv-14479

vs.

                          DISTRICT JUDGE TERRENCE G. BERG

COMMISSIONER OF        MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Erica Mullen seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to Social Security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 21) and Defendant's Motion for Summary Judgment (docket no. 22). The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* docket no. 5.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

I.     RECOMMENDATION:

The Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 21) be DENIED and that Defendant's Motion for Summary Judgment (docket no. 22) be GRANTED.

II.     PROCEDURAL HISTORY:

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income benefits with protective filing dates of March 5, 2010, alleging that she had been disabled since July 30, 2008, due to obesity and anxiety. (*See* TR 24, 26.) Plaintiff has since amended her alleged onset date to December 21, 2009. (*See* TR 24.) The Social Security Administration denied benefits. (*See* TR 24.) Plaintiff requested a *de novo* hearing, which was held on September 20, 2011, before Administrative Law Judge (ALJ) Marie D. Greener, who subsequently found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 24-37.) The Appeals Council declined to review the ALJ's decision, and Plaintiff commenced this action for judicial review. The parties then filed their instant Motions.

## III. PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT TESTIMONY

### A. Plaintiff's Testimony and Medical Record

Plaintiff alleges a history of obesity and mental impairments related to depression and anxiety. (*See* TR 26-27.) Although Plaintiff's Motion does not set forth an account of her medical record or her hearing testimony, she draws the Court's attention to the factual recitation set forth in her brief to the ALJ. (*See* docket no. 21 at 8 (citing TR 182-87).) Likewise, Defendant does not set forth a factual background in this matter, instead adopting that which is set forth by the ALJ. (Docket no. 22 at 5.) The ALJ sets forth her account of the record in her decision. (TR 29-35.) There are no material inconsistencies between Plaintiff's factual background and the ALJ's recitation of the record; the undersigned will incorporate these factual recitations by reference. Nevertheless, the undersigned has conducted an independent review of Plaintiff's medical record and the hearing transcript and will include comments and citations as necessary throughout this

Report and Recommendation.

### B. The Vocational Expert

The ALJ did not consult a vocational expert when reaching her decision. Instead, for the reasons discussed further herein, the ALJ relied on the Medical-Vocational Guidelines to reach a finding of "not disabled." (*See* TR 36.)

### IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Act through March 31, 2013; that she had not engaged in substantial gainful activity since December 21, 2009, the amended date of her alleged onset; and that she suffered from severe obesity and anxiety. (TR 26.) The ALJ further found that Plaintiff suffered from the non-severe impairments of non-insulin dependent diabetes, depression, and borderline personality disorder. (TR 26-27.) The ALJ then found that her impairments did not meet or equal those listed in the Listing of Impairments. (TR 27-29.) The ALJ found, however, that Plaintiff's allegations regarding the extent of her symptoms were not wholly credible and that Plaintiff could perform light work "except she can only occasionally interact with others." (TR 29.) The ALJ then determined, in reliance on the Medical-Vocational Guidelines, that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 36.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act from December 21, 2009, through the date of her decision. (TR 36.)

### V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal

standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past

work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

**C.    Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at

*8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that this matter should be reversed or remanded for the following reasons: (1) the ALJ failed to properly apply SSR 85-16 when considering Plaintiff's mental impairments; (2) the ALJ erred in determining Plaintiff's credibility; (3) the ALJ failed to properly apply SSR 82-59 in finding that Plaintiff did not comply with her prescribed treatment; (4) the ALJ failed to properly weight the medical opinions of record and failed to resolve any conflicts therein; (5) the ALJ failed to properly consider Plaintiff's fiance's testimony; (6) the ALJ erred when she did not further develop the record with regard to any inconsistencies therein; and (7) the ALJ erred when she did not consult a vocational expert. (Docket no. 21 at 9-30.)

### 1.     The ALJ's Application of SSR 85-16

When assessing the severity of a mental impairment, the ALJ must evaluate the degree of functional loss by looking at activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The Commissioner has noted the following:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

SSR 85–16. The ALJ must consider "all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment." 20 C.F.R. § 404.1520a(c)(1).

Plaintiff asserts that the ALJ ignored evidence supporting Plaintiff's claims that she could not leave her home. Specifically, Plaintiff alleges that (1) the ALJ erroneously found that she could engage in a range of activities of daily living where all of those activities took place within her home; (2) the ALJ speculated that she did not leave her apartment because of a poor work attitude rather than from her psychiatric condition; and (3) the ALJ erroneously speculated that her reduction in work hours was the result of a personality conflict with her boss. (Docket no. 21 at 11-12.) Plaintiff asserts that her employer's efforts to get her to stay even though she was working minimal hours show that she did not deliberately miss work and that she was not a poor employee. (*Id.* at 12.) Additionally, Plaintiff argues that her failure to search for additional employment supports her assertion that she could not leave her home. (*Id.*) Plaintiff further alleges that she submitted evidence from 2007 and 2008 related to her condition to show that her condition was not something spontaneous, but the ALJ erroneously used this information to show noncompliance with treatment. (*Id.* at 12-13.)

Plaintiff's argument, however, merely asks the Court to reevaluate the evidence before the ALJ as nothing suggests the ALJ "ignored" any of the evidence cited by Plaintiff. To the contrary, the ALJ acknowledged that Plaintiff's activities of daily living were mostly in her home, but she also noted that Plaintiff was able to "shop for clothes, shoes and electronics and that she can drive, although often she is afraid to drive." (TR 30.) She discussed Plaintiff's allegation that she "was unable to work full-time because she experienced anxiety attacks, that she would frequently call in sick and that she was considered unreliable as an employee" (TR 30), but she found that Plaintiff's work history "d[id] not create any favorable inferences of an individual who is well motivated to work." (TR 34.) Thus, while Plaintiff argues that the ALJ "ignored" evidence, Plaintiff does not point to any evidence that the ALJ failed to consider. Therefore, Plaintiff's Motion should be denied

7

with regard to this issue.

### 2. The ALJ's Credibility Determination

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not enough to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations

and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Plaintiff argues that the ALJ erred when she speculated that Plaintiff was non-compliant with her medical care because Plaintiff's medications "made her feel uncomfortable." (Docket no. 21 at 15.) And she asserts that while the ALJ properly cited that she was able to bathe and groom herself, cook, clean, do laundry, manage money, take public transportation, and take care of her children, the ALJ failed to consider that she did not attend her kids' school activities, she did not go out often, she got anxious and had loose bowels when she went out in public, she was only able to care for her children if she followed a strict routine, she threw temper tantrums if her schedule was thrown off, and she got very sweaty and nervous in public. (*Id.* at 16.) She further noted that her fiance's testimony supported her claims. (*Id.* at 16-17.)

Again, however, Plaintiff fails to show that the ALJ erred in her determination. Here, the ALJ acknowledged Plaintiff's claims, stating that Plaintiff "reported that she avoids going out at all costs, that she has withdrawn from all friends and that she screams at people." (TR 28.) She further noted that while Plaintiff could perform some activities of daily living, Plaintiff "does not engage in social activities and she frequently stays home and avoids other people. When she is anxious, she will often talk too much or combine words . . . . She tries to avoid 'situations' and bossy or abrasive people." (TR 30.)

In reaching her credibility determination, though, the ALJ discussed more than Plaintiff's activities of daily living. The ALJ first found that "[t]he medical evidence . . . calls into question the claimant's desire to help herself and to improve her symptoms and functioning." (TR 31.) She noted that Plaintiff "did not follow through" with her recommended treatment plan in 2005; that she "started and stopped taking a variety of psychiatric medications" in 2006 even though "she seemed

9

to be tolerating Zoloft well at that time;" that her primary care physician stopped prescribing medication in 2007 because she "missed too many appointments and that she simply wanted medication but was hesitant about receiving counseling;" and that she was "discharged from individual therapy in June 2007, because of a series of 'no-shows' for scheduled appointments." (TR 31.)  The ALJ then found that in 2011, Plaintiff's treating therapist "questioned the claimant as to whether she really wants to improve her mood and whether or not she really wanted to feel better," and her treating psychiatrist noted that "claimant needed to put more effort into her treatment."  (TR 32.)  The ALJ further noted that Plaintiff's medical record was inconsistent with her allegations (TR 33-34) and that her work history did not support her credibility (TR 34).

Although Plaintiff points to some evidence in support of her position, the ALJ's finding is supported by substantial evidence.  For the reasons discussed above, the ALJ's determination is sufficiently specific to make clear to the Court and to Plaintiff the weight she gave to Plaintiff's allegations and the reason for that weight.  Therefore, Plaintiff's Motion should be denied with regard to this issue.

### 3.     The ALJ's Application of SSR 82-59

Plaintiff next asserts that the ALJ failed to properly apply SSR 82-59 in her determination that Plaintiff failed to comply with prescribed treatment.  (Docket no. 21 at 18-19.)  Plaintiff, however, misapplies SSR 82-59 to the ALJ's decision.

SSR 82-59 states that an ALJ "may make a determination that an individual has failed to follow prescribed treatment only where all of the following conditions exist:

> 1. The evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity (SGA) or, in the case of a disabled widow(er) that the impairment meets or equals the Listing of Impairments in Appendix 1 of Regulations No. 4, Subpart P; and

> 2. The impairment has lasted or is expected to last for 12 continuous months from onset of disability or is expected to result in death; and
>
> 3. Treatment which is clearly expected to restore capacity to engage in any SGA (or gainful activity, as appropriate) has been prescribed by a treating source; and
>
> 4. The evidence of record discloses that there has been refusal to follow prescribed treatment.

SSR 82-59. This ruling, however, applies to "[a]n individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the Social Security Administration (SSA) determines can be expected to restore the individual's ability to work.' Here, Plaintiff would not have "otherwise be found to be under a disability" as the ALJ acknowledged her severe anxiety but found that it did not cause any functional limitations beyond an occasional ability to interact with others. Thus, Plaintiff's argument fails.

### 4.   The ALJ's Consideration of the Medical Opinions of Record

The ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). But it is equally well settled that the ultimate issue of disability is reserved to the Commissioner and not the treating or examining physician. *Kidd v. Comm'r*, 283 Fed. Appx. 336, 341 (6th Cir. 2008). Thus, when a medical or non-medical source offers an opinion on "an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight." *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)). The opinion of an examining source is generally accorded more weight than is the opinion of a source who did not examine the claimant. 20 C.F.R. § 404.1527(c)(1). The opinion of a state agency medical or psychological consultant is reviewed in the same manner as is the opinion of a nonexamining physician or psychologist. 20 C.F.R.

§404.1527(e).

Additionally, the Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)). If the opinion of a treating source is not afforded controlling weight, an ALJ must apply certain factors in determining what weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Wilson*, 378 F.3d at 544 (citation omitted). Even then, a finding that a treating-source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected. Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4. Notably, though, "it is not the Court's job to conduct a *de novo* review of the evidence or to rubber stamp the ALJ's decision. The Court must ensure both that the ALJ applied the correct legal standard and that his decision is supported by substantial evidence. *See Christephore v. Commissioner of Social Sec.*, No. 11-13547, 2012 WL 2274328, *6 (E.D. Mich. June 18, 2012) (Roberts, J.)

Additionally, the Sixth Circuit has upheld the decision of an ALJ which gave less than controlling weight to a treating physician without specifically analyzing the factors set forth in 20 C.F.R. § 404.1527(c) where the ALJ provided "good reason" for the decision. *See Infantado v.*

12

*Astrue*, 263 Fed.Appx. 469, 473-74 (6th Cir. 2008). There is no per se rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. § 404.1527(c)(2)-(6). *Norris v. Comm'r*, No. 11-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r*, 394 Fed. Appx. 216, 222 (6th Cir. 2010)). Moreover, an ALJ's failure to discuss the factors of § 1527(c)(2)-(6) may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [Section 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r*, 195 Fed. Appx. 462, 470 (6th Cir. 2006) (citing *Wilson v. Comm'r*, 378 F.3d 541, 547 (6th Cir. 2004)). Although not listed by name, Plaintiff challenges the weight the ALJ gave to Plaintiff's treating physician, Dr. Carr; the state consultative examiner, Dr. Shapiro; and the state reviewing psychologies, Dr. Hoffman.

With regard to Dr. Carr, the ALJ found in relevant part as follows:

. . . . Dr. Carr indicated that the claimant had "very good" or "limited but satisfactory" functioning in most mental categories relating to unskilled work. In several categories, such as the ability to work in ordination with or proximity to others, the ability to complete a normal workday and the ability to deal with normal work stress, Dr. Carr indicated that the claimant was "seriously limited but not precluded." Although these assessments do not track with the vocational terms commonly used by the [SSA], an examination of the questionnaire form shows "seriously limited but not precluded" to correspond to moderate limitations. In no categories did Dr. Carr indicate that the claimant was "unable to meet competitive standards" or that she exhibited "no useful ability to function," which I interpret to correspond to marked limitations. He did state that the claimant had "marked" difficulties in maintaining social functioning. However, this seems internally inconsistent with his ratings of functional limitations and with the assigned GAF score. He further noted the claimant would miss more than four days of work per month due to her mental impairments, which is also inconsistent with the functional limitations contained in his evaluation. I therefore give limited weight to Dr. Carr's conclusions that the claimant has marked difficulties in maintaining social

functioning.

(TR 33-34.) Plaintiff argues that the ALJ erred his evaluation of Dr. Carr's report because there is no inconsistency between an individual missing four days of work per month and a marked limitation in social functioning. Plaintiff, however, misreads the ALJ's opinion. The ALJ did not find any inconsistency between Dr. Carr's opinion that Plaintiff would miss four days of work per month and his finding that she had marked limitations in social functioning. The ALJ found that these two opinions were *both* inconsistent with Dr. Carr's determination that Plaintiff was not "unable to meet competitive standards" and that she failed to show "no useful ability to function." Moreover, the ALJ acknowledged that Dr. Carr was Plaintiff's treating physician, that Dr. Carr was a psychiatrist, and that Plaintiff's received "individual therapy weekly to biweekly." (TR 33.) Therefore, even if the Court would hold otherwise, the undersigned finds that the ALJ provided good reason for her decision to afford Dr. Carr's opinion limited weight.

Plaintiff also argues that if there was an internal inconsistency in Dr. Carr's opinion, the ALJ was required to either have the records reviewed by an independent examiner or contact Dr. Carr to clarify the inconsistency. (Docket no. 21 at 24.) As Defendant notes, however, the ALJ is only required to make such an inquiry where the record is unclear. *See Ferguson v. Comm'r of Soc. Sec.*, 628 F. 3d 269, 274 (6th Cir. 2010). As discussed above, the record here supports the ALJ's determination.

With regard to Dr. Shapiro's opinion, the ALJ gave it "some weight," noting that Dr. Shapiro's findings were "consistent with moderate limitations in the area of social functioning." (TR 35.) The ALJ added that "Dr. Shapiro also found that the claimant *may* have limitations in other areas such as concentration and memory deficits and symptoms of lethargy and lack of motivation. However, his evaluation suggests that the claimant's advanced pregnancy at that time

14

was partly responsible for the claimant's emotional state." (TR 35.) Plaintiff does not challenge the ALJ's finding with regard to Dr. Shapiro's opinion to the extent that she accounted for occasional interaction with others. Instead, Plaintiff takes issue with the ALJ's determination that her pregnancy may have been responsible for her emotional state. (*See* docket no. 21 at 23.) Even assuming, *arguendo*, that Plaintiff's argument has merit, as Defendant notes, "Plaintiff's purported mental impairments stemmed from her social anxieties," not from her inability to focus or concentrate or her lethargy or lack of motivation. (*See* docket no. 22 at 18.)

Finally, with regard to Dr. Hoffman, the ALJ gave his opinion "some weight" where he found that Plaintiff "exhibited mild limitations in activities of daily living, moderate limitations in social functioning, and no limitations and (sic) in concentration persistence or pace." (TR 35.) The ALJ noted that "[a]lthough the reviewing psychologist was a non-examining, non-treating source, her opinion was consistent with the record as a whole as it existed in September 2010." (TR 35.) She further noted that with regard to additional evidence that had been submitted after Dr. Hoffman reviewed the record, the "additional medical evidence pertaining to the period after September 2010 does not contain clinical findings that would alter her assessment and conclusions." (TR 35.) Plaintiff argues that the ALJ's determination that the additional evidence would not have change Dr. Hoffman's opinion is "pure speculation." (Docket no. 21 at 22.) But the ALJ did not err in making such a determination. *See McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (reasoning in a similar situation that the ALJ did not err where he "considered the medical examinations that occurred after the [reviewing physician's] assessment and took into account any relevant changes in [the plaintiff's] condition").

For the reasons discussed above, Plaintiff's motion should be denied with regard to her arguments related to the medical opinions of record.

### 5. The ALJ's Consideration of Plaintiff's Fiance's Testimony

Plaintiff also asserts that the ALJ failed to give appropriate weight to Plaintiff's fiance's testimony. (Docket no. 21 at 26.) In her decision, the ALJ noted as follows:

> [Christopher Bradley] stated that he has lived with the claimant since approximately early 2008. He described the claimant as exhibiting erratic behavior when she became stressed out about her employment and that she is generally a high-strung person. She rarely goes out or interacts with others, according to Mr. Bradley.

(TR 30.) Plaintiff argues that the ALJ erred by not considering this testimony in support of Plaintiff's allegations. (Docket no. 21 at 26.) But as Defendant notes, while the ALJ was permitted to consider Plaintiff's fiance's testimony, he was not required to do so. (Docket no. 22 at 13 (citing 20 C.F.R. §§ 404.1513(d) and (d)(4).) The ALJ's decision to consider Mr. Bradley's testimony and find it less than persuasive is not reversible error.

### 6. The ALJ's Development of the Record

In addition to the alleged inconsistency discussed in Dr. Carr's report, Plaintiff asserts that the ALJ committed reversible error where she cited to inconsistencies in the record as a basis for her determination but failed to further investigate those inconsistencies. (Docket no. 21 at 27.) Plaintiff alleges, generally, that the ALJ's failure to contact the physicians for additional information or bring her concerns to the attention of Plaintiff's representative fell short of her obligation to conduct a full and fair inquiry in this matter. (*Id.* at 28 (citing *Heckler v. Campbell*, 461 U.S. 458 (1983).)

20 C.F.R. § 416.912 provides, in relevant part, as follows:

> (a) General. In general, *you have to prove to us* that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s). . . .
>
> . . .
>
> (c) *Your responsibility. You must provide medical evidence* showing that you have an impairment(s) and how severe it is during the time you say that you are disabled.

16

> *You must provide evidence*, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim. . . .
>
> . . .
>
> (d) Our responsibility. Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application. We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports.
>
>> (1) Every reasonable effort means that we will make an initial request for evidence from your medical source and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, we will make one followup request to obtain the medical evidence necessary to make a determination. . . .

20 C.F.R. § 416.912 (emphasis added). Thus, as a general matter, it is a claimant's burden to provide a complete record, but the ALJ must put forth the statutorily required "reasonable effort" to assist the claimant. *See, e.g., Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) ("[T]he claimant must demonstrate that she has a 'severe impairment.'" (citation omitted)); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir.1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the [Commissioner] . . . to make a disability determination, rests with the claimant."). Thus, it was Plaintiff's obligation to provide a complete record in this matter. And as this Court has previously noted,

> The ALJ is an examiner charged with developing the facts. *Richardson v. Pearles*, 402 U .S. 386, 410 (1971); *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir.1983). The ALJ must not assume the role of an attorney. *Pearles*, 402 U.S. at 410; *Lashley*, 708 F.2d at 1051. The ALJ only has a heightened duty to develop the record when the claimant, unfamiliar with the hearing procedures, is unrepresented by an attorney. *Lashley*, 708 F.2d at 1051.

*Webster v. Commissioner of Social Sec.*, No. 12-14903, 2013 WL 6510713, at*4 (E.D. Mich Dec.

12, 2013). Like in *Webster*, Plaintiff was represented my an attorney. And it was her attorney that "represented to the ALJ that the record was complete." *See id.*

### 7. The ALJ's Reliance on the Vocational Guidelines

Finally, Plaintiff alleges that the ALJ erred when she relied on the Vocational Guidelines (or "Grids") instead of consulting a vocational expert because the light work base was eroded by the ALJ's finding that Plaintiff could not more than occasionally interact with others. (Docket no. 21 at 29.) Plaintiff argues that this finding "rendered the Plaintiff's request for a Hearing by an ALJ a pointless process" because "[w]ithout a vocational expert, the Plaintiff was not able to present her asserted mental limitation in a hypothetical question for the vocational expert." (*Id.* at 29-30.) Plaintiff's argument, however, assumes that the ALJ would have included these "asserted mental limitations" in Plaintiff's RFC. But an ALJ is not required to include in Plaintiff's RFC (or in the hypothetical questions to the VE) those limitations that she does not find credible. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Moreover, as Defendant contends,

> The Grid "can . . . be applied when claimant's non-exertional limitations do not significantly impair claimant's ability to perform at a given exertional level." *Rose v. Shalala*, 34 F.3d 13, 19 (1st Cir.1994). "If a non-strength impairment, even though considered significant, has the effect only of reducing [the] occupational base marginally, the Grid remains highly relevant and can be relied on exclusively to yield a finding as to disability." *Ortiz v. Secretary of Health & Human Servs.*, 890 F.2d 520, 524 (1st Cir.1989).

*Andrews v. Commissioner of Social Sec.*, No. 08-12296, 2009 WL 1505791, at *7 (E.D. Mich, May 27, 2009). Here, the ALJ found that the additional limitation of "occasional interaction with others" had "little or no effect on the occupational base of unskilled light work." (TR 36.) Specifically, she noted that "[t]here are numerous occupations in the light or sedentary work categories that require the ability to only occasionally interact with others." (TR 36.) Plaintiff provides no authority to

dispute this finding. Therefore, the Court should deny Plaintiff's Motion with regard to this issue.

## VI. CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (docket no. 21) should be DENIED and Defendant's Motion for Summary Judgment (docket no. 22) should be GRANTED.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: February 27, 2015      s/ Mona K. Majzoub
            MONA K. MAJZOUB

UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: February 27, 2015         s/ Lisa C. Bartlett
                                 Case Manager